**RICHARD M. LEE**
**Special Attorney**
**Acting Under Authority**
**Conferred by 28 U.S.C. § 515**
**U.S. Attorney's Office**
**Quentin N. Burdick U.S. Courthouse**
**655 First Ave. North, Suite 250**
**Fargo, ND 58102**
Phone:      (701) 297-7400
FAX:        (701) 297-7405
Email:      Richard.Lee3@usdoj.gov

**TARA ALLISON**
**Trial Attorney**
**(202) 598-7882**
**tara.allison@usdoj.gov**
**TAYLOR PAYNE**
**Trial Attorney**
**(202) 445-5579**
**taylor.payne@usdoj.gov**
**Civil Rights Division**
**150 M St NE**
**Washington, DC 20002**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> MURRELL DOUGLAS DEELA, <br><br> Defendant. | MJ 25-109-BLG-SPW <br><br><br> **STIPULATED OFFER OF PROOF** |

The United States of America, by and through counsel Richard M. Lee, Special Attorney, Trial Attorney Tara Allison, and Trial Attorney Taylor Payne, hereby submits the United States' offer of proof, in anticipation of the change-of-plea hearing set for April 2, 2026. The United States has conferred with counsel for the Defendant, and the Defendant agrees that the below factual basis is true and accurate and that the government could prove it beyond a reasonable doubt.

1

## THE CHARGES

In 1:26-cr-30-WWM, the Information charges the Defendant with Sexual Abuse, in violation of 18 U.S.C. §§ 2242(3) and 1152, and False Statement or Representation Made to a Department or Agency of the United States, in violation of 18 U.S.C. § 1001(a)(2). ECF 16.

## PLEA AGREEMENT

The Defendant agrees to plead guilty to the Information. The United States agrees to make certain recommendations with respect to the Defendant's sentence. *See* Plea Agreement p.7.

The agreement includes requirements that the Defendant waive his right to appeal any aspect of the sentence imposed, and any revocation sentence imposed that is within or below the policy statement guideline range, as long as he does not challenge the grade of the violation(s) alleged. The Defendant retains the right to allege ineffective assistance of counsel.

No promises or representations have been made by the United States except as set forth in writing in the Plea Agreement.

## ELEMENTS

The essential elements of Count One of the Information, Sexual Abuse, are:

<u>First</u>, the Defendant knowingly engaged in a sexual act with Minor One without Minor One's consent, and did so through coercion;

2

Second, the Defendant knew that Minor One did not consent to the sexual act; and

Third, the offense occurred within the special maritime and territorial jurisdiction of the United States; to wit, the exterior boundaries of the Northern Cheyenne Indian Reservation.

The essential elements of Count Two of the Information, False Statement or Representation Made to a Department or Agency of the United States, are:

First, the Defendant made a false statement;

Second, the statement was made in a matter within the jurisdiction of the Federal Bureau of Investigation;

Third, the Defendant acted willfully; that is, the Defendant acted deliberately and with knowledge both that the statement was untrue and that his conduct was unlawful; and

Fourth, the statement was material to the decisions or activities of the Federal Bureau of Investigation; that is, it had a natural tendency to influence, or was capable of influencing, the agency's decisions or activities.

## PENALTIES

Sexual Abuse, in violation of 18 U.S.C. §§ 2242(3) and 1152, carries a maximum possible penalty of life imprisonment; a $250,000 fine; mandatory restitution; and five years' to lifetime supervised release.

False Statement or Representation Made to a Department or Agency of the United States, in violation of 18 U.S.C. § 1001(a)(2), carries a maximum possible

3

penalty of eight years' imprisonment; a $250,000 fine; and three years' supervised release.

## FACTUAL BASIS

The Defendant agrees that the United States could prove the following facts that establish the essential elements of the charged offenses beyond a reasonable doubt, and the Defendant admits these facts are true and accurate. The following facts do not encompass all of the evidence that would have been presented had this matter gone to trial.

On August 7, 2024, the Defendant was on duty and acting in his official capacity as an officer for the United States Department of the Interior, Bureau of Indian Affairs, Office of Justice Services (BIA-OJS) at his duty station, the Northern Cheyenne Indian Reservation (NCIR). At the time of the offense, the Defendant was 29 years old and Minor One, an enrolled member of the Northern Cheyenne Tribe, was 14 years old.

At approximately 11:15 p.m., the Defendant encountered Minor One at a gas station known as "The Depot" on the NCIR. The Defendant performed a takedown maneuver on Minor One, who was visibly intoxicated and had tried to run away, and placed her in the back of his patrol car. The Defendant was aware that Minor One was a young teen.

Minor One, who was sobbing, repeatedly asked the Defendant if he was taking her to jail. Based on a conversation initiated by Minor One as she was crying, Minor One was led to believe she could avoid going to jail by engaging in a sexual act with the Defendant.

Instead of driving Minor One to her grandmother's house, where the Defendant later claimed he was taking her, the Defendant drove Minor One to the People's Park, located within the NCIR, which was dark and deserted. The Defendant did not notify dispatch or anyone at BIA that he was taking the juvenile to a park, despite his knowledge that BIA policy and training required him to do so.

After parking his patrol car in the unlit park, the Defendant radioed dispatch and falsely stated that he had just dropped off Minor One at her grandmother's house.

The Defendant got out of his patrol car, removed Minor One from the back seat, and moved Minor One outside the view of the patrol vehicle cameras. The Defendant then engaged in sexual acts with Minor One, as defined in 18 U.S.C. § 2246(2)(A) and (B), by causing his penis to have contact with Minor One's mouth and by penetrating Minor One's vulva with his penis. The Defendant knowingly engaged in these sexual acts without Minor One's consent and did so through coercion.

After, the Defendant warned Minor One not to tell anyone what had happened. The Defendant drove Minor One to her grandmother's house, went to the door, and

asked for help getting Minor One into the house. The Defendant and another individual moved Minor One into the house.

The next morning, on August 8, 2024, Minor One disclosed the sexual assault to multiple witnesses and underwent a medical examination. The FBI collected evidence, including the clothing Minor One was wearing at the time of the sexual assault, and the FBI laboratory determined that the Defendant's semen was in two places on Minor One's pants.

The Defendant was informed on August 8 by BIA-OJS management that Minor One had made a sexual assault allegation against him. The same day, the Defendant wrote an incident report purporting to document his interactions with Minor One. In his incident report, the Defendant knowingly made material false statements, including that he drove Minor One, whom he described in his report as highly intoxicated, directly to her grandmother's house from The Depot, and the Defendant knowingly materially omitted that he engaged in sexual acts with Minor One; when, in truth and fact, as the Defendant then knew, he drove Minor One past her grandmother's home to a dark and deserted park, where he engaged in the above-described nonconsensual sexual acts with her. In writing a false and misleading incident report, the Defendant intended to cover up the fact that he had engaged in nonconsensual acts with a minor in his custody, which, if known, could be

6

investigated as a potential federal criminal civil rights violation, within the jurisdiction of the FBI, an agency of the United States.

The following day, on August 9, NCIR BIA Police Chief ordered the Defendant to download his patrol car video footage from the night of the incident. The Defendant reported that he was unable to do so. The Defendant showed the Chief and an FBI agent a brief video excerpt of his transport of Minor One. The Chief instructed the Defendant to bring his patrol car back to the station on August 11, 2024, so that a BIA employee with the skills to recover and download the full video footage from the patrol car could do so.

Hours before the Defendant was required to bring in his patrol car so that the video evidence documenting his encounter with Minor One could be recovered, at approximately 2:00 a.m. on August 11, the Defendant reported to BIA dispatch that his patrol car was on fire. BIA officers responded to the Defendant's home, where both his patrol and his personal vehicle were on fire. The patrol vehicle and its video system were severely burned. A Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) investigation concluded that the fires in both vehicles were incendiary fires—i.e., fires intentionally ignited under circumstances where they should not be.  Only the Defendant's fingerprints were found on his patrol car.

7

The Defendant, with counsel, provided two voluntary statements to the FBI. In both FBI interviews, the Defendant's statements were made in a matter within the jurisdiction of the FBI. In his first voluntary statement to the FBI, on August 15, 2024, the Defendant acknowledged that he had known that Minor One was either 14 or 15 years old. The Defendant knowingly and willfully made material false statements during the voluntary interview, including that he drove Minor One straight to her grandmother's home from The Depot, that he did not make any stops while transporting Minor One from The Depot to her grandmother's home, that there would be no reason for his semen to be found on Minor One, and that he did not engage in any sexual contact with Minor One; when, in truth and fact, as the Defendant then knew, he drove Minor One past her grandmother's home to the dark and deserted People's Park, where he engaged in the above-described nonconsensual sexual acts with her.

In his second voluntary statement to FBI, on February 11, 2025, the Defendant repeated his false statement that he drove Minor One from The Depot straight to her grandmother's house. When confronted with a screenshot showing him and Minor One at the People's Park the night of August 7, 2024, the Defendant admitted to driving Minor One to the park. The Defendant then knowingly and willfully made additional material false statements, including that he drove Minor One to the park to try to calm her down because she was crying, and that Minor One tried to hug him

8

but he stopped her; when, in truth and fact, as the Defendant then knew, he drove Minor One to the dark and deserted People's Park in order to engage in sexual acts with her, and the Defendant did in fact engage in the above-described nonconsensual sexual acts with her.

DATED this 25th day of March, 2026.

RICHARD M. LEE
Special Attorney

TARA ALLISON
Trial Attorney

TAYLOR PAYNE
Trial Attorney

MURRELL DOUGLAS DEELA
Defendant

For    MARK D. PARKER
Defense Counsel

RYAN J. WARNER
Defense Counsel